CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

AUG 21 2009

JOHN F. CORCORAN, CLERK
BY: /s/
 DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 5:05cr00029-2 |
| | ) | |
| v. | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| RANDOLPH WILLIAM AREY. | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |

Randolph William Arey ("Arey") filed this 28 U.S.C. § 2255 motion challenging his conviction and sentence of 595 months for conspiring to distribute methamphetamine and two counts of possessing a firearm in furtherance of drug trafficking. Arey maintains that counsel provided ineffective assistance on several grounds. This matter is before the court on respondent's motion to dismiss. The court finds that Arey's claims of ineffective assistance of counsel have no merit. Accordingly, the court grants respondent's motion to dismiss.

## I.

A grand jury in the Western District of Virginia returned a superceding indictment that charged Arey's brother Timothy Arey ("Timothy") with multiple drug and firearm offenses and that charged Arey with conspiring to distribute methamphetamine, in violation of 21 U.S.C. § 846, and with two counts of possessing a firearm in furtherance of that offense on separate occasions, in violation of 18 U.S.C. § 924(c)(1). A jury found Arey guilty on all three counts, and the court sentenced him to a total of 595 months incarceration, consisting of 235 months as to the conspiracy, 60 months as to the first firearm offense, and 300 months as to the second firearm offense.

Arey appealed, challenging the sufficiency of the evidence and asserting that the court erred in instructing the jury on the law of conspiracy and by enhancing his sentence on the conspiracy charge based on facts not found by the jury. The United States Court of Appeals for the Fourth Circuit affirmed his conviction and sentence and, on October 9, 2007, the Supreme Court of the

United States denied Arey's petition for writ of certiorari.

## II.

Arey raises several claims of ineffective assistance of counsel. However, the court finds that none of his claims meet both the performance and prejudice prongs of Strickland v. Washington, 466 U.S. 668, 669 (1984), and, therefore, the court dismisses them.

In order to establish a claim of ineffective assistance of counsel, Arey must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669; see also Williams v. Taylor, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Strickland, 466 U.S. at 689; see also Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977). In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance; that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins, 724 F.2d at 1430-31). If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290 (citing Strickland, 466 U.S. at 697). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Strickland, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

Case 5:05-cr-00029-SGW-RSB   Document 177   Filed 08/21/09   Page 2 of 10   Pageid#: 569

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields, 956 F.2d at 1297-99; Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In this case, Arey has not demonstrated ineffective assistance of counsel.

### A.

Arey argues that counsel provided ineffective assistance when counsel stipulated to the chain of custody of "owe sheets" created by a witness, Edward Wayne Roadcap ("Roadcap"), because, according to Arey, it deprived him of the opportunity to challenge the authenticity and accuracy of the owe sheets. The court finds that Arey has not demonstrated that counsel performed deficiently in making the stipulation or that it prejudiced him and, therefore, dismisses the claim.

Among the decisions counsel can independently make without obtaining the defendant's consent are matters of tactics and trial strategy, such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998) (quoting United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992); Estelle v. McGuire, 502 U.S. 62, 69 (1991). Counsel is afforded wide latitude in making tactical decisions. Strickland, 466 U.S. at 689.

In this case, counsel stipulated that Roadcap stated that he was afraid his home would be raided and gave owe sheets to Welton Young ("Young") and requested Young to burn them. Instead of destroying the documents, Young gave them to Chief of Police Carl A. Stovall, who gave them to Investigator Josh Sholes, who maintained the owe sheets until trial. Counsel did not stipulate that the owe sheets were accurate.[1] Rather, he stipulated to the chain of custody.[2] Timothy's attorney

---

[1] If believed, Roadcap's testimony established that he personally wrote down on the sheets the names of people to whom he had fronted methamphetamine, including information as to how much methamphetamine Arey and his brother had received and/or bought from him, and noted how much money they each owed and how much they each had

3

then used the stipulation in closing argument to attack Roadcap's credibility because the stipulation conflicted with Roadcap's testimony that the owe sheets were found in Roadcap's home. Counsel argued that inasmuch as Roadcap's testimony regarding the owe sheets contradicted the stipulation and an agent's testimony that the owe sheets were not found in Roadcap's home, then possibly the rest of Roadcap's testimony was not truthful either. Under the circumstances, the court finds that Arey has not shown either that counsel performed deficiently or that but for the stipulation there is a reasonable probability that the outcome of the proceeding might have been different.

### B.

Arey alleges that counsel provided ineffective assistance in failing to object to the admission of uncharged crimes and/or bad acts when Timothy's wife Rhonda Fisher Arey ("Rhonda") testified about a threat Arey made against her. Arey argues that counsel should have moved for a mistrial or a "curative" instruction. The court finds that Arey has not demonstrated that counsel's performance was deficient, and therefore, dismisses his claim.

At trial, Rhonda testified that Arey threatened her by stating that "Timmy had a big pond in behind the house and . . . that [they] could off [her] and nobody would ever find [her]." She also testified that Arey "often told Timmy that he needed to keep his bitch in line" and that Arey called her the "911 queen" because she had a reputation for calling the police and social services regarding methamphetamine. Arey argues that although he did make the threat to Rhonda, he did so in the context of a domestic dispute, not with the intent to silence her regarding his methamphetamine

---

paid. Roadcap was subject to cross examination on this testimony. Further, both Arey and his brother Timothy challenged the accuracy of the sheets when later testifying in their own behalf.

[2] The court notes that, in its motion to dismiss, the government contends, and Arey does not contest, that it could have produced testimony establishing that Young, in fact, obtained the owe sheets from Roadcap and turned them over to law enforcement officials.

4

dealings. He claims that inasmuch as the threat was not related to the conspiracy charge, but rather a domestic dispute, her testimony was inadmissible under Rule 404(b) of the Federal Rules of Evidence.

Rule 404(b), governing the admissibility of evidence concerning other crimes, wrongs, or acts, states that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). Direct or intrinsic evidence of the crime charged does not fall within the gambit of Rule 404(b). See United States v. Lambert, F.2d 1006, 1007 (10th Cir. 1993). In a conspiracy case, "[a]cts committed in furtherance of the charged conspiracy are themselves part of the act charged." United States v. Green, 175 F.3d 822 (10th Cir. 1999) (citing United States v. Garcia Abrego, 141 F.3d 142, 175 (5th Cir. 1998)). Evidence of such acts is therefore, intrinsic and does not implicate the requirements of 404(b). Id.

In this case, the threat the defendant made against Rhonda was not offered to show that the defendant was a violent or murderous man, or that he was generally inclined to violate the law. Rather, the evidence of the threat was admitted as an act in furtherance of the conspiracy. Rhonda testified regarding the threat after testifying about her previous attempt to destroy methamphetamine she found outside her home and after testifying that she had previously confronted her husband about it. Contextually, the evidence suggested that Arey threatened Rhonda to keep her from reporting or interfering with his methamphetamine dealings. Therefore, the evidence appeared to be both admissible and intrinsic, and the court would not have sustained an objection, granted a mistrial, or given a "curative" instruction. Consequently, Arey has shown neither deficient performance, see

5

Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987) (Counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis."), nor prejudice and dismisses this claim.

## C.

Arey claims that counsel was ineffective in failing to object to or move for the "suppression" of "hearsay" testimony given by John Harold, IV ("Harold"). However, Arey has not shown either deficient performance or resulting prejudice and, therefore, the court dismisses the claim.

Arey challenges Harold's testimony at trial that once or twice, Harold observed the Arey brothers at Roadcap's residence "picking up some meth"; that on another occasion, Roadcap took Harold to get "an ounce" of methamphetamine from Arey's house; that he observed Arey with Roadcap when Roadcap was using scales to weigh Roadcap's methamphetamine; and that Roadcap told him that "Randy was selling [methamphetamine] for Tim." Arey argues that Harold's testimony was unsubstantiated and inconsistent with that of Roadcap. Therefore, he argues, the testimony is inadmissible as hearsay.

Determining what objections should be raised is regarded as a tactical decision and a matter of trial strategy. Sexton, 163 F.3d at 885. Decisions regarding trial tactics and strategy are decisions that counsel can make without obtaining defendant's consent and to which counsel is afforded "wide latitude." Id.; Strickland, 466 U.S. at 689. This is because "[t]rial counsel has superior experience with the criminal process and detailed, objective knowledge of the strengths and weaknesses of the defendant's case." Id.

In this case, most of the Harold's challenged testimony does not involve hearsay at all. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing,

6

offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Most of Harold's challenged testimony was based on his personal observations, not statements he heard others make. The Rules governing hearsay do not exclude such testimony, and counsel was not ineffective in failing to object to it on that ground. See Clanton, 826 F.2d at 1359. Although Harold's testimony that Roadcap told Harold that Arey was selling methamphetamine for Timothy was arguably hearsay, that statement also could have been viewed as "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" and, therefore, not hearsay. See Fed. R. Evid. 801(d)(2)(E). Under the circumstances, Arey has not shown that counsel performed deficiently, and even if counsel should have objected to the testimony, Arey has not demonstrated prejudice as a result of counsel's failure to do so. In light of all the other testimony, including Arey's own damaging testimony, Arey has not demonstrated that but for counsel's failure to object, there is a reasonable probability that the outcome of his case would have been different. Accordingly, the court dismisses his claim.

### D.

Arey argues that counsel provided ineffective assistance in failing to expose his ex-wife's "perjury of motive to fabricate testimony." Essentially, Arey is complaining that counsel's cross-examination of Kathy Arey ("Kathy") was inadequate because he did not impeach her credibility and motive to fabricate testimony based on a lawsuit she filed regarding a postnuptial agreement. The court finds that Arey has not demonstrated prejudice as a result of counsel's cross-examination, and thus, Arey's claim fails.

Arey argues that his ex-wife Kathy had a motive to fabricate testimony stemming from a lawsuit over the former couple's postnuptial agreement. After their acrimonious divorce, Kathy filed a lawsuit in state court against Arey challenging the validity of a postnuptial agreement she had

signed. The court ultimately upheld the postnuptial agreement. Per the agreement, if one party sought to set aside the agreement and was unsuccessful, that party would be responsible for the other party's attorney's fees and other costs associated with defending the action. Arey argues that Kathy wanted to see him go to prison on his criminal charges so that she would not have to reimburse him for his attorney fees and other costs of defending the postnuptial agreement. Arey claims that counsel's failure to bring out this "motive" on cross examination rendered his assistance ineffective. However, the court notes that there was plenty of grist for cross-examination and that counsel did not miss the opportunity. Arey's counsel and Timothy's counsel vigorously attacked Kathy's credibility. They attempted to impeach her on multiple grounds, including: her separation and acrimonious divorce from Arey, her desire to avoid her own criminal charges, and her conviction for grand larceny. Under the circumstances, Arey has not shown that his counsel performed deficiently or that there was a reasonable probability that further impeachment of Kathy based on her alleged motive to avoid reimbursing Arey for the postnuptial lawsuit would have changed the outcome of his case. Therefore, the court dismisses the claim.

### E.

Arey claims that counsel was ineffective because he "expos[ed]" Arey to the jury "as a liar." Arey essentially argues that when counsel stipulated to the chain of custody of Roadcap's owe sheets and then questioned Arey regarding the documents, he "conceded his client's involvement in the conspiracy and, therefore, his guilt." However, as previously noted, counsel did not stipulate that the owe sheets were accurate. More fundamentally, Arey was present throughout the entire trial, he listened to all the evidence presented, and he chose to testify. Under the circumstances, it is more accurate to conclude that Arey chose to fabricate testimony, not as Arey claims that his counsel

8

exposed him to the jury as a liar. Arey has shown neither deficient performance nor prejudice and dismisses the claim.

### F.

Arey alleges that counsel was ineffective in failing to request a "buyer-seller" jury instruction. However, Arey has failed to show that counsel's performance was deficient or that Arey suffered any prejudice as a result of counsel's failure to request the instruction. Accordingly, the court dismisses the claim.

A buyer-seller instruction informs the jury that where the defendant is merely a buyer or seller in a drug transaction, that evidence, standing alone, is insufficient to establish a conspiracy to distribute narcotics. See United States v. Mills, 995 F.2d 480, 485 & n.1 (4th Cir. 1993); United States v. Jones, No. 94-5403, 1996 U.S. App. LEXIS 10352, at *9 (4th Cir. May 6, 1996). A buyer-seller instruction need not be given when the evidence shows that the defendant's relationship with his co-defendants went further than a simple buy-sell transaction. Mills, 995 F.2d at 485; United States v. Yearwood, 518 F.3d 220, 226 (4th Cir. 2008); United States v. Brown, 856 F.2d 710, 712 (4th Cir. 1988) (recognizing that "[a] large quantity of [drugs] . . . supports an inference or presumption that appellant knew that he was a part of a venture which extend[ed] beyond his individual participation" (internal quotation marks omitted)); see also United States v. Dortch, 5 F.3d 1056, 1065-66 (7th Cir. 1993) (defendant's ongoing relationship with conspiracy members and receipt of drugs on credit may be evidence that he is a member of the conspiracy). Here, Arey's own evidence did precisely that.

In this case, Arey's own testimony shows that Arey's relationship with his co-conspirators

went further than a simple buy-sell transaction.[3] Arey testified that over a period of at least five years he was obtaining (either buying or receiving on credit) methamphetamine, cutting it up, breaking it down, repackaging it, and selling it to his customers. Based on his own testimony, the court finds it doubtful that Arey was entitled to a buyer-seller instruction, and further, that Arey has not demonstrated that counsel was deficient in failing to request the instruction. Moreover, even if counsel's performance was deficient, Arey has not shown resulting prejudice because the court's instruction to the jury correctly apprised the jury of the essential elements of the crime of conspiracy. Accordingly, the court concludes that Arey has failed to show that his counsel performed deficiently in not requesting the instruction, or that but for counsel's failure to request the instruction, there is a reasonable probability that the outcome of his case would have been different. Therefore, the court dismisses this claim.

### III.

For the reasons stated herein, the court grants the government's motion to dismiss.

**ENTER:** This 21st day of August, 2009.

United States District Judge

---

[3] The government's evidence demonstrated that Arey purchased and sold large quantities of methamphetamine on credit over a long period of time. The evidence, as summarized by the Fourth Circuit, established that:
> The Arey brothers' main supplier . . . Wayne Roadcap testified that he "fronted" large quantities (pounds) of methamphetamine to Timothy and Randolph from 1996 or 1997 until 2001. The Defendants would then sell the drugs and return cash to Roadcap . . . . The Government also presented the testimony of several cooperating witnesses who had bought methamphetamine from one or both of the Arey brothers and . . . Kathy Arey, Randolph's ex-wife, testified that Randolph obtained methamphetamine from his brother and Roadcap. On two occasions, the Arey brothers came to her house to break up larger quantities of methamphetamine for distribution.

United States v. Arey, No. 06-4634, slip op. at 4-6 (4th Cir. Mar. 8, 2007) (per curiam).